IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

BILOXI FREEZING & PROCESSING, )
INC.; GULFSIDE CASINO )
PARTNERSHIP; and JOHN CARLTON )
DEAN )
)
    Plaintiffs, )
)
vs. ) CIVIL ACTION NO.: _____
)
MISSISSIPPI POWER COMPANY, )
)
    Defendant. )

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
APR 01 2016
ARTHUR JOHNSTON
BY _____ DEPUTY

1:16cv117 H50-JCG

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446, Defendant Mississippi Power Company ("Mississippi Power") hereby removes the above-captioned action from the Circuit Court of Harrison County, Mississippi to the United States District Court for the Southern District of Mississippi.[1] In support of its Notice of Removal, Mississippi Power states as follows:

### Introduction

Plaintiffs have filed the instant litigation in state court, attacking Mississippi Power's recovery from ratepayers of costs relating to the construction of an electric generation and transmission project. Mississippi Power's inclusion of those costs in its rates is authorized by orders of the Federal Energy Regulatory Commission

---

[1] Mississippi Power reserves all affirmative defenses.

and the Mississippi Public Service Commission. If the Court were to grant Plaintiffs the relief they seek—damages from past rates and an injunction as to future rates—it would prohibit the very recovery expressly authorized by federal and state agencies. Accordingly, Plaintiffs are effectively challenging the terms of Mississippi Power's Tariff and orders of both the Federal Energy Regulatory Commission and of the Mississippi Public Service Commission. Under 16 U.S.C. § 825p, the federal district courts have exclusive jurisdiction over disputes regarding the regulations and orders of the Federal Energy Regulatory Commission, and removal is proper. Even absent that statutory commitment, however, removal jurisdiction would still exist because Plaintiffs' claims necessarily raise federal issues—*e.g.*, whether rate recovery permitted by the Federal Energy Regulatory Commission was properly authorized and reasonable; whether Mississippi Power's conduct conformed with Federal Energy Regulatory Commission regulations and its Tariff; and whether that Tariff will govern Mississippi Power's conduct going forward.

## Background

1. As a regulated public utility, Mississippi Power has the obligation to serve the full energy requirements of its more than 188,000 retail customers located in Mississippi Power's certificated service territory, which encompasses portions of the 23 counties of southeast Mississippi. Mississippi Power also sells

electricity at wholesale directly to East Mississippi Electric Power Association, the City of Collins and South Mississippi Electric Power Association ("SMEPA"), which in turn provides service to Coast Electric (including Harrison County residents), Dixie Electric, Pearl River Electric, Singing River Electric and Southern Pine Electric. Mississippi Power also has an interchange agreement with SMEPA, pursuant to which Mississippi Power provides various services, including furnishing protective capacity. Therefore, in addition to those customers served at retail, Mississippi Power provides generation through these wholesale transactions to serve the full requirements of approximately 177,000 additional Mississippi electric customers. The electricity sold to these wholesale customers account for approximately 30% of Mississippi Power's total generation, and is regulated exclusively by the Federal Energy Regulatory Commission.

2. Mississippi Power holds a Certificate of Public Convenience and Necessity initially issued by the Mississippi Public Service Commission ("Commission") in 2010, authorizing, *inter alia*, the construction, acquisition, and operation of the Kemper County IGCC Project ("Kemper Project"). The Kemper Project consists of: (i) a lignite-fueled solid-fuel base load electric generating plant, comprised of a two-on-one integrated gasification combined cycle with a net summer capacity of 582 megawatts ("Plant"); (ii) environmental equipment for the reduction of various emissions from the facility, including but not limited to,

equipment and facilities for the capture of approximately 65% of the carbon dioxide emissions from the Plant; (iii) approximately sixty miles of electric transmission lines with voltages varying from 115 kilovolts (kV) to 230 kV; (iv) three new transmission substations; (v) approximately five miles of natural gas transportation facilities to accommodate natural gas deliveries to the Plant; (vi) approximately 30 miles of water transportation facilities to accommodate the delivery of the City of Meridian treated wastewater to the Plant site for the Plant's cooling and process water needs; (vii) lignite leases, mining equipment and all facilities needed to mine lignite; (viii) approximately 60 miles of carbon dioxide pipeline necessary to transport carbon dioxide from the Plant to oil fields suitable for Enhanced Oil Recovery; and (ix) all other related facilities necessary for the Kemper Project's operation.

3. Construction of the Kemper Project commenced in June of 2010 and the Kemper Project is now nearing completion. The lignite mine (including the dragline), the transmission projects, the pipelines, and the Combined Cycle portion of the Plant are complete and operational. To date, the Combined Cycle has generated billions of kilowatt-hours of electricity for Mississippi Power's customers from natural gas and the lignite mine has mined and stockpiled over one million tons of lignite. Startup and commissioning of the gasifier and gas cleanup

166855.2

portions of the Kemper Project are in progress and the Plant is currently scheduled to reach full commercial operation in the third quarter of 2016.

## Federal Energy Regulatory Commission Rate Matters

4. Wholesale electric rates are exclusively regulated by the Federal Energy Regulatory Commission pursuant to authority established by the Federal Power Act. Changes in wholesale electric rates and tariffs are requested pursuant to Section 205 of the Federal Power Act (codified at 16 U.S.C. § 824d). Pursuant to this authority, the Federal Energy Regulatory Commission has promulgated regulations to govern electric rate case submittals and proceedings under Part 35 of Title 18 of the Code of Federal Regulations. These federal regulations allow Mississippi Power to include the Kemper Project in wholesale rates.

5. All of Mississippi Power's wholesale rate filings since 2011 have included Kemper Project costs in rate base. Since construction for the Kemper Project began in 2010, Mississippi Power has requested a change in its wholesale MRA tariff ("Tariff") on five different occasions, all of which included recovery of costs for the Kemper Project:

- On September 27, 2012, Mississippi Power requested a wholesale rate increase of $22,588,981. On May 3, 2013, the Federal Energy Regulatory Commission issued an order pursuant to 18 C.F.R. § 375.307, making the rate increase permanent and final.

- A second increase in wholesale rates was requested equal to $24,200,000 annually. Mississippi Power's request was approved and its Tariff was revised by an order issued on May 30, 2013.

- On March 31, 2014, Mississippi Power requested another increase in wholesale rates equal to $10,140,000. This change in Mississippi Power's Tariff became effective upon the issuance of an order on May 20, 2014.

- On March 31, 2015, Mississippi Power again requested a change in its wholesale rate Tariff. The proposed rate change was approved by an order on June 25, 2015.

- Most recently, Mississippi Power filed another request to change the wholesale Tariff on March 31, 2016. Mississippi Power's request, if approved, would result in an annual increase in wholesale rates equal to $7,321,245. This wholesale rate request remains pending at the Federal Energy Regulatory Commission.[2]

### Mississippi Public Service Commission Rate Matters

6. On August 13, 2015, the Mississippi Public Service Commission issued a Temporary Rate Order finding that "emergency temporary rates [were] required to prevent injury to the business or interest of the people or any public utility of this state." The Commission, therefore, allowed Mississippi Power to implement an emergency rate under bond.

7. On December 3, 2015, the Commission issued an order approving Mississippi Power's In-Service Asset Proposal. This order resulted in an annual

---

[2] The Court may consider Mississippi Power's rate filings, the orders of the Federal Energy Regulatory Commission accepting such filings, and the MRA Tariff because they are filed with FERC. *See, e.g., Imperial Irrigation Dist. v. Cal. Indep. Sys. Operator*, --- F. Supp. 3d ----, 2015 WL 7571831, at *8 n. 7 (S.D. Cal. Nov. 24, 2015) ("[J]udicial notice is not required because the tariff is filed with FERC and is therefore 'the equivalent of a federal regulation.'") (quoting *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 839 (9th Cir. 2004)). Alternatively, the Court may take judicial notice of those documents. *See id.* ("Furthermore, even if judicial notice of CAISO's tariff is required, the Court concludes it is the proper subject of such notice."). Mississippi Power's MRA Tariff is a matter of public record, available at http://etariff.ferc.gov/TariffBrowser.aspx?tid=1934.

retail rate increase of $126,000,000, which became effective with the first billing cycle of January, 2016. These permanent rates also took the place of the temporary emergency rates previously established by the Commission in August of 2015.

## Procedural Background

8. On March 2, 2016, the Plaintiffs commenced this civil action against Mississippi Power, in the Circuit Court of Harrison County, Mississippi, Cause Number A2401-16-45, by filing the Complaint. Their counsel sent a courtesy copy of the Complaint to the undersigned counsel on that same day.

9. This Notice of Removal is filed within the time period allowed by 28 U.S.C. § 1446(b). The documents attached hereto as Exhibit 1 constitute all of the pleadings and process and other papers provided to Mississippi Power in this action to date.

10. A true and correct copy of this Notice of Removal is being filed promptly with the Clerk of the Harrison County Circuit Court and written notice of the filing of this Notice of Removal is being served on the Plaintiffs as required by 28 U.S.C. §§ 1446 (a) & (d).

13. All of the prerequisites for removal of this action to federal court on the basis of federal question jurisdiction have been satisfied. Federal question jurisdiction exists and is conferred on this Court pursuant to 28 U.S.C. §§ 1331,

1441 and 1446, and 16 U.S.C. § 825p. Supplemental jurisdiction over remaining state law claims, if any, is conferred on this Court pursuant to 28 U.S.C. § 1367.

## Argument and Authority

I. **Removal Jurisdiction Exists under the Federal Power Act.**

14. For purposes of removal, Title 16 U.S.C. § 825p of the Federal Power Act provides: "The District Courts of the United States ... shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of this chapter or any rule, regulation, or order thereunder. ..." *See, e.g., Dynegy*, 375 F.3d 831.

15. The gravamen of Plaintiffs' Complaint is that Mississippi Power should be responsible for all costs of the Kemper Project, and that none of its ratepayers should bear any. Mississippi Power's ratepayers include its retail (state jurisdiction) ratepayers and its wholesale (federal jurisdiction) ratepayers.[3] Throughout their Complaint, in fact, Plaintiffs purport to bring claims and seek relief on behalf of—or at least acknowledge that this lawsuit must affect—all of Mississippi Power's customers:

---

[3] In addition to a direct attack on orders, rules and regulations of the Federal Energy Regulatory Commission, a negative decision impacting retail rates could potentially implicate the price squeeze doctrine as it relates to wholesale rates, an independent federal question. 18 CFR § 2.17; *Fed. Power Comm. v. Con-Way Corp.*, 426 U.S. 271 (1976).

- "Despite the constant syphoning of funds **from the ratepayers** to the costly Kemper facility . . ." (Compl. ¶ 30) (emphasis added);

- "The web site claims that 'These jobs will increase Mississippi income by $42 million in the first year of operation,' omitting all mention of the projected or past cost overruns, the costs **to be borne by ratepayers,** or the loss of jobs due to the exorbitant costs imposed on Plaintiffs **and others**" (*Id.* ¶ 31) (emphases added);

- "Plaintiffs, **along with other residents of Harrison County**[4] will be permanently and irreparably damaged by the instability and erratic fluctuation in energy prices and the gaping discrepancies in the **southern electric market**[5] creating incentives for businesses to seek to terminate existing commercial relationships with Plaintiffs and to establish relationships with business partners outside of the Kemper projects' inflationary economics" (*Id.* ¶ 50) (emphasis added);

- "It is in the **public interest** that this Court grants preliminary and injunctive relief preventing Defendant from taking the arbitrary and unlawful actions cited above" (*Id.* ¶ 51) (emphasis added);

- "The harm to Defendant from being forced to desist from its present course is outweighed by the anticipated damages to Plaintiffs **and the residents of Harrison County**, more specifically **the ratepayers** who have entered into contracts with Defendant" (*Id.* ¶ 52) (emphases added);[6]

---

[4] Because Mississippi Power delivers electricity directly to Coast Electric, this allegation alone would include all of Coast Electric's customers and Mississippi Power's customers located in Harrison County.

[5] *See also* (Compl. ¶ 40) (referring to the "southern electric market" involving Mississippi Power's interstate transmission and sale of electricity). Mississippi Power is a member of the southern electric system, which consists of Mississippi Power Company, Alabama Power Company, Georgia Power Company, Gulf Power Company, and Southern Power Company. These companies function as a single, integrated public utility system through adherence to the Southern Company System Intercompany Interchange Contract, an agreement on file with, approved by, and under the exclusive jurisdiction of the Federal Energy Regulatory Commission.

[6]*See* fn. 4.

- "Defendant concealed **from ratepayers**, including Plaintiffs, by not providing advance noticed as required, that it sought to pass through construction work in progress, into the 2015 rate package it pushed through the Public Service Commission without having completed the requisite prudency hearing" (*Id.* ¶ 54(g)) (emphasis added);

- "Defendant concealed the long-range rate impact information of the 2015 rate package by asking that the information, of great interest to Plaintiffs **and to the general public**, be kept confidential" (*Id.* ¶ 54(h)) (emphasis added);

- "Defendant distorted the facts in order to create a false **public impression** of its scheme to pass through its cost-overruns and overspending **to consumers** . . ." (*Id.* ¶ 54(j)) (emphases added);

- "Defendant has continued to **misinform the public**, including **ratepayers** such as Plaintiffs, in an effort to continue to conceal its mismanagement . . ." (*Id.* ¶ 54(k)) (emphases added).

16. Indeed, Plaintiffs "demand that Defendant Mississippi Power and not the ratepayers, bear responsibility" for the costs of the Kemper Project. (Compl., p. 2). That is relief that would flow to *all* ratepayers—wholesale and retail—and cannot be limited to just the three Plaintiffs themselves. Whether by seeking damages for past costs or an injunction as to future costs, Plaintiffs are effectively challenging the terms of Mississippi Power's Federal Regulatory Energy Commission Tariff and the Commission orders. Tariffs filed with federal agencies are the equivalent of federal regulations issued by the agency,[7] and granting the requested relief (including both damages and injunctive relief) would prohibit

---

[7] *See* fn. 2.

Mississippi Power from doing precisely what the Federal Energy Regulatory Commission regulations and Mississippi Power's wholesale Tariff allow.

17. Because it is evident from the face of the Complaint that a determination of this action necessarily involves the interpretation and enforcement of a Federal Regulatory Energy Commission order, regulation or rule, removal is appropriate pursuant to 16 U.S.C. § 825p and under the well pleaded-complaint rule.

## II. The Plaintiffs' Right to Relief Necessarily Depends on the Resolution of a Disputed and Substantial Question of Federal Law.

18. "There is . . . [a] longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction, [the United States Supreme Court has] recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). No "single, precise, all-embracing test [exists] for jurisdiction over federal issues embedded in state-law claims between nondiverse parties." *Id.* at 314. Instead, to determine whether a case fits within this category, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* If a plaintiff's right to relief is necessarily dependent on the resolution of a disputed and

substantial question of federal law, then the exercise of federal jurisdiction is appropriate. *Id.*

19. Resolving Plaintiffs' Complaint requires a determination of: (1) whether rate recovery permitted by the Federal Energy Regulatory Commission was properly authorized and reasonable; (2) whether Mississippi Power's conduct conformed with Federal Energy Regulatory Commission regulations and its Tariff; and (3) whether that Tariff will govern Mississippi Power's conduct going forward. The relief that Plaintiffs request (*i.e.* damages and injunction) is contrary to the orders entered by the Federal Energy Regulatory Commission to date. Mississippi Power cannot deviate from orders entered by the Federal Energy Regulatory Commission under any circumstances. These claims are federal in nature and cannot be resolved without reference to, reliance on and an interpretation of the Federal Energy Regulatory Commission regulations and Tariff.

20. Similarly, removal is warranted because the Plaintiffs' claims, in part, implicate significant federal question jurisdiction issues. There is a national interest in providing a federal forum for litigation that involves questions of electric generation and construction costs of generating facilities, both of which have a profound impact on interstate commerce.

21. Stated simply, the matters at issue are, in part, regulated by the Federal Energy Regulatory Commission under the Federal Power Act, and some of the claims at issue in this case cannot be decided without reference to the federal regulations promulgated by, including a Tariff approved by, the agency that exercises federal jurisdiction in the subject area.

**WHEREFORE**, Mississippi Power respectfully requests that the above-described action now pending in the Circuit Court of Harrison County, Mississippi, be removed to this Court.

DATED: April 1, 2016

_____
One of the Attorneys for
Defendant Mississippi Power Company

**OF COUNSEL**

BEN H. STONE (MS Bar No. 7934)
JONATHAN P. DYAL (MS Bar No. 99146)
K.C. HIGHTOWER (MS Bar No. 101246)
BALCH & BINGHAM LLP
1310 Twenty Fifth Avenue
Gulfport, MS 39501
Telephone: (228) 864-9900
Facsimile: (228) 864-8221
bstone@balch.com
jdyal@balch.com
kchightower@balch.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day I have electronically filed the foregoing pleading or other paper with the Clerk of the Court using the CM/ECF and the state court MEC system which sent notification of such filing to the following:

Joe Sam Owen, Esq.
jso@owen-galloway.com

Rob Myers, Esq.
rpm@owen-galloway.com

Michael J. Avenatti, Esq.
mavenatti@eaganavenatti.com

I hereby certify that I have also mailed via United States Mail, postage pre-paid, a true and correct copy of the above and foregoing pleading to counsel of record.

This the 1st day of April, 2016.

_____
Of Counsel