# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**BILOXI FREEZING & PROCESSING, INC.;**
**GULFSIDE CASINO PARTNERSHIP;**
**and JOHN CARLTON DEAN**                                    **PLAINTIFFS**

**vs.**                              **CIVIL ACTION NO.: 1:16-cv-117 KS-MTP**

**MISSISSIPPI POWER COMPANY**                               **DEFENDANT**

## MISSISSIPPI POWER COMPANY'S MEMORANDUM
## IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO
## STATE A CLAIM OR FOR JUDGMENT ON THE PLEADINGS

COMES NOW, Defendant, Mississippi Power Company ("MPC"), pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure, and files this Memorandum in Support of its Motion to Dismiss for Failure to State a Claim or for Judgment on the Pleadings of all claims of Plaintiffs, Biloxi Freezing & Processing, Inc. (the "Business"), Gulfside Casino Partnership (the "Casino") and John Carlton Dean (the "Individual") (collectively, "Plaintiffs")[1]:

## INTRODUCTION

This lawsuit is nothing more than a collateral attack on MPC's electric utility rates and orders lawfully approved by the Federal Energy Regulatory Commission ("FERC") and the Mississippi Public Service Commission ("PSC"). Despite Plaintiffs' attempts to disguise the Complaint, each form of relief is premised upon this Court first determining that the rates approved by FERC and the PSC were improper, and then independently establishing what the "proper" rate should be. Courts have, on numerous occasions, firmly held that ratemaking authority is a legislative function vested solely with FERC and the PSC. Therefore, as more

---

[1] MPC reserves all affirmative defenses.

thoroughly briefed in MPC's simultaneously-filed Motion to Dismiss for Lack of Subject Matter Jurisdiction ("MPC's Jurisdictional Motion"), the Complaint should be dismissed.

The Complaint fails to state a viable claim upon which relief may be granted. Plaintiffs allege the following counts against MPC: (i) violations of the Mississippi Consumer Protection Act ("MCPA"); (ii) fraud and fraudulent concealment; (iii) intentional interference with prospective business advantage; and (iv) injunctive relief. Plaintiffs' claims are subject to dismissal for the following reasons:

**Filed Rate Doctrine**. Plaintiffs' claims in this case are entirely premised upon MPC's rates being too high because the rates include recovery of costs related to the Kemper Project. Plaintiffs, however, have only been charged MPC's electric utility rates that were approved by FERC and the PSC, and Plaintiffs do not allege otherwise. The filed rate doctrine is a well-established rule which prohibits a collateral attack to a utility's approved rates. As a result, all of Plaintiffs' claims are barred as a matter of law by the filed rate doctrine, and this Court should dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted.

**Mississippi Consumer Protection Act Claims**. The MCPA requires that before any private right of action may be brought for alleged violations of the statute, "the plaintiff must have first made a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General." MISS. CODE ANN. §75-24-15(2). The Complaint fails to even allege an attempt to satisfy this statutory prerequisite. Therefore, in addition to numerous other fatal flaws in this cause of action, Plaintiffs' MCPA claims must be dismissed.

**Fraud and Fraudulent Concealment**. The Complaint generally alleges that MPC made fraudulent representations and omissions sometime "within the last three years." Plaintiffs' failure to specifically plead any time or place of the alleged fraud requires dismissal of the claims

in accordance with Miss. R. Civ. P. 9(b).  Even excusing this requirement, MPC does not, as a matter of law, have a fiduciary relationship with Plaintiffs creating a duty to disclose the information allegedly "concealed."  As a matter of law, Plaintiffs cannot have "reasonably relied" on MPC's alleged representations and omissions.  Therefore, Plaintiffs' claims for fraud and fraudulent concealment must be dismissed.

**Interference with Prospective Economic Advantage**.  Accepting Plaintiffs' allegation as true — that MPC's rates somehow "interfered" with Plaintiffs' business — Plaintiffs cannot satisfy the required element that the interference was "without right or justifiable cause."  MPC's rates were approved by FERC and the PSC as just and reasonable pursuant to their exclusive original jurisdiction and clear legal authority, and thus, are as a matter of law, justifiable.  Therefore, Plaintiffs' claims for interference with prospective economic advantage must be dismissed.

**Injunctive Relief**.  Finally, Plaintiffs' request for the Court to enjoin MPC's rates would require the Court to usurp the exclusive authority of FERC and the PSC.  Injunctive relief is a remedy and not a cause of action.  The Complaint should be dismissed.

## BACKGROUND

The extensive proceedings held before FERC and the PSC relating to the construction of the Kemper Project and MPC's rates, both of which were approved by FERC and the PSC, are thoroughly set forth in MPC's Jurisdictional Motion.  For brevity, MPC would thus adopt and incorporate the "Background" Section in MPC's Jurisdictional Motion as if expressed herein.

## LEGAL STANDARD

As a threshold inquiry, the Court must first determine it has subject matter jurisdiction before deciding whether Plaintiffs have stated a claim upon which relief may be granted.  *Smith*

*v. Reg'l Transit Auth.*, 756 F.3d 340, 344 (5th Cir. 2014) (citing *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 510-11 (2006)). Assuming *arguendo* that the Court finds jurisdiction, "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (citation omitted). "<u>[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss</u>." *Id.* (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (emphasis added)).[2] The same standard applies to MPC's alternative request for judgment on the pleadings under FED. R. CIV. P. 12(c). *See Doe v. MySpace*, *Inc.,* 528 F.3d 413, 418 (5th Cir. 2008).

Plaintiffs' fraud claim is further subject to the heightened pleading rigors of FED. R. CIV. P. 9(b) (fraud must be pled with particularity). "Pleading fraud with particularity in [the Fifth Circuit] requires '<u>time, place and contents</u> of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (reversing district court with instructions to dismiss fraud claims not pled with particularity).

## <u>LEGAL ANALYSIS</u>

Each of Plaintiffs' asserted causes of action fail to state a claim upon which relief may be granted for the following reasons:

---

[2] Federal pleading requirements govern Plaintiffs' Complaint upon removal. "Once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings." *Prewitt v. City of Greenville*, 161 F. 3d 296, 299 (5th Cir. 1998) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 437 (1974)). "District courts [thus] routinely apply *Iqbal* and *Twombly* to Rule 12(b)(6) motions to dismiss in cases removed from state court and in which the pleadings have not been amended." *Allison v. J.P. Morgan Chase Bank, N.A.*, 2012 U.S. Dist. Lexis 142522, *14-16 (E.D. Tex. Oct. 2, 2012).

# I. ALL OF PLAINTIFFS' CLAIMS ARE BARRED UNDER THE FILED RATE DOCTRINE.

Since construction for the Kemper Project began in 2010, MPC has requested and received a change in its *wholesale* cost-based tariff ("Tariff") from FERC on five different occasions, all of which included recovery of costs for the Kemper Project.[3] Similarly, on December 3, 2015, the PSC approved MPC's *retail* rates designed to recover certain Kemper Project costs that began being billed to customers on January, 2016.[4] All of Plaintiffs' claimed damages in this case are premised upon this Court first determining that the rates approved by FERC and the PSC were improper, and then independently establishing what the "proper" rate should be. *See* (Compl., ¶¶ 8-40, 66-69). Plaintiffs' claims are, as a direct result, barred by the Filed Rate Doctrine and must be dismissed.

Utilities are prohibited from charging any price, higher or lower, than the rate approved by FERC or the PSC, as applicable. 16 U.S.C. § 824d(d); MISS. CODE ANN. § 77-3-35(1). This is known as the "filed rate" doctrine "which forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory agency." *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577 (1981). "The considerations underlying the doctrine . . . are preservation of the agency's primary jurisdiction over reasonableness of rates and the need to insure that regulated companies charge only those rates of which the agency has been made cognizant." *Id*. at 577-78 (citing *City of Cleveland v. FPC*, 174 U.S. App. D.C. 1, 10,

---

[3] The Orders of FERC and the PSC are public records filed in legal proceedings and are proper for consideration on a motion to dismiss. *See United States ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F. 3d 265, 274 (5th Cir. 2015); *Noble v. Bank of Am., N.A.*, 2016 U.S. Dist. Lexis 1022, *4 (S.D. Miss. Jan. 6, 2016) ("While reviewing a motion to dismiss, courts may take judicial notice of court pleadings in other cases, because pleadings are public records."). *See* FERC Docket Nos. ER16-1297-000; ER15-1404-000; ER14-1624-000; ER13-1221-000 and ER12-337-000.

[4] *See* PSC Docket Nos. 2009-UA-14 and 2015-UN-80.

525 F. 2d 845, 854 (1976)).  This doctrine has also been recognized under Mississippi law.  *Am. Bankers' Ins. Co., et al. v. Wells*, 819 So. 2d 1196, 1203-05 (Miss. 2001).

The policy underlying the doctrine's bar to challenges of a filed rate is well-settled, rigid and without exception:

> [T]he rate of the [utility] duly filed is the only lawful charge.  Deviation from it is not permitted upon <u>any pretext</u>.  [Utilities] and [customers] are charged with notice of it, and they as well as the [utility] must abide by it, unless it is found by the Commission to be unreasonable.  Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed.  This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress . . . in order to prevent unjust discrimination.[5]

*American Tel. & Telegraph Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 222 (1998) (emphasis added) (quoting *Kan. City Southern R. Co. v. Carl*, 227 U.S. 639, 653 (1913)).

Under the Filed Rate Doctrine, a court may neither adjudicate whether a rate is reasonable nor replace a filed rate with a more reasonable one.  "Through the FPA, Congress preempted states, state courts, and even federal courts from acting in areas reserved exclusively for the FERC.  <u>For example, under the FPA, a buyer or seller of electricity may not sue in court to change the filed rate for any reason</u>."  *Gulf States Util. Co. v. Ala. Power Co. et al.*, 824 F.2d 1465, 1470 (5th Cir. 1987) (emphasis added); *see also AEP Tex. N. Co. v. Texas Indus. Energy Consumers*, 473 F.3d 581, 585-86 (5th Cir. 2006); *Maine Pub. Serv. Co. v. Fed. Power Comm.*, 579 F.2d 659, 665-66 (1st Cir. 1978) (citing *Montana-Dakota Util. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 251-52 (1951).  This is true irrespective of the conduct of the utility.  In

---

[5] While the filed rate doctrine had its origins in Interstate Commerce Act cases, it has been applied to the Federal Power Act by both the U.S. Supreme Court and the Fifth Circuit.  *See e.g., Miss. Power & Light Co. v. Mississippi ex rel. Moore*, 487 U.S. 354 (1988); *AEP Tex. N. Co. v. Texas Indus. Energy Consumers*, 473 F.3d 581 (5th Cir. 2006).

refusing to establish a general "fraud exception" to the filed rate doctrine, the Second Circuit has held:

> If courts were licensed to enter this process under the guise of ferreting out fraud in the rate-making process, they would unduly subvert the regulating agencies' authority and thereby undermine the stability of the system. For only by determining what would be a reasonable rate absent the fraud could a court determine the extent of the damages. And it is this judicial determination of a reasonable rate that the filed rate doctrine forbids.

*Wegoland Ltd. v. NYNEX Corp. et al*, 27 F.3d 17, 21 (2d Cir. 1994).[6]

The facts and holding of *Marcus v. AT&T Corp.* are particularly instructive. 138 F.3d 46 (2d Cir. 1998). In *Marcus*, plaintiff subscribers alleged that AT&T deceived its customers by failing to disclose that in calculating bills for long distance charges, partial minutes were in all instances rounded up to the next full minute. *Id.* at 51. This practice was not disclosed on customer bills or any other material sent to customers, but was consistent with the terms of AT&T's filed and approved tariff. *Id.* The plaintiffs brought several state court claims against AT&T, including but not limited to, deceptive and unfair business practices, fraud and deceit, negligent misrepresentation, injunctive relief and unjust enrichment. *Id.* at 51-52. The Second Circuit held all of the above claims were barred by the filed rate doctrine and affirmed the trial court's dismissal for failure to state a claim. *Id.* at 60.

The Court reasoned that "[t]he appellants cannot demonstrate that they reasonably relied on any misrepresentations by AT&T. As a matter of law, it would not be reasonable for a consumer to harbor a belief about AT&T's billing practices that is inconsistent with the tariff AT&T has filed with the FCC." *Id.* at 63. In essence, the *Marcus* court relied upon the "presumed knowledge" doctrine which states: "**[t]he [consumer's] knowledge of the lawful**

---

[6] The plaintiffs in *Wegoland* were alleging the utility's parent sold products and services to the subsidiary utility at inflated prices, which then used the inflated prices to justify inflated rates.

rate is **<u>conclusively presumed</u>**." *Id.* (quoting *Kan. City Southern R. Co. v. Carl*, 227 U.S. 639, 653 (1913)) (emphasis added).  Similarly, claims of fraud and deceit are barred irrespective of whether the fraud is alleged to be visited upon the regulator or the consumer.  *See e.g., Sun City Taxpayers' Ass'n v. Citizens Utils. Co.*, 45 F.3d 58, 62 (2nd Cir. 1995).  The Plaintiffs' claims and legal theory in the case *sub judice* are indistinguishable from the customers in *Marcus*.

The Fifth Circuit recently ruled on a similar case alleging fraud concerning an interstate pipeline company.  In *Medco Energi US, L.L.C. v. Sea Robin Pipeline Co., L.L.C.*, the defendant pipeline company incurred significant infrastructure damage following Hurricane Ike that caused a prolonged service interruption to certain customers.  729 F.3d 394, 396 (5th Cir. 2013).  Defendant Sea Robin reported on several occasions to the customers that restoration efforts were progressing well and projected the pipeline would be back in service by March 2009.  *Id.* at 397.  These updates were posted on Sea Robin's website and emailed to customers, including the plaintiffs.  *Id.*  Sea Robin was ultimately behind schedule in completing the pipeline, which the plaintiffs allege caused them damages prompting the suit.  *Id.*  The Fifth Circuit held that because Medco was taking service from Sea Robin under an interruptible rate, allowing recovery of damages would be contrary to the filed rate, notwithstanding Sea Robin's alleged misrepresentations.  *Id.* at 399-400.  As a result, the court affirmed the dismissal of the entire case, including plaintiff's claim for tortious interference with a business contract.  *Id.*

MPC has, at all relevant times, charged only the rates that were approved by FERC and the PSC.  Indeed, Plaintiffs do not allege otherwise.  Instead, Plaintiffs claim that MPC's alleged fraud and unfair business practices have resulted in an unfair rate because the rate includes the recovery of costs related to the Kemper Project.  As a direct result, all of Plaintiffs' claims are

barred by the filed rate doctrine, and this Court should dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted.

## II. PLAINTIFFS FAILED TO PLEAD STATUTORY PREREQUISITES REQUIRING DISMISSAL OF THEIR MCPA CLAIMS, WHICH FAIL AS A MATTER OF LAW.

### A. Plaintiffs' Failure to Plead Statutory Prerequisites.

The MCPA generally prohibits "[u]nfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce," including certain practices or acts enumerated in subsection (2) of the statute. *See* MISS. CODE ANN. §75-24-5(1)-(2). Plaintiffs' MCPA claims are pled under subsection (2). (Complaint, at ¶ 44). A private right of action under the MCPA for practices or acts prohibited by subsection (2) may only be brought pursuant to MISS. CODE ANN. §75-24-15(1).[7]

The MCPA mandates that prior to filing such a private right of action that "**the plaintiff must have first made a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General.**" MISS. CODE ANN. §75-24-15(2) (emphasis added). Nowhere in the Complaint do Plaintiffs allege this statutory prerequisite was complied with, or that Plaintiffs attempted to informally resolve their MCPA claims through such procedures, or even that Plaintiffs attempted to contact the Attorney General. *See* (Complaint).[8]

---

[7] Only the Attorney General may bring an action for the general "unfair methods of competition" contemplated by subsection (1) of §75-24-5. The action must be brought in the name of the State of Mississippi and filed in County or Chancery court. *See* MISS. CODE ANN. §75-24-9. That is why Plaintiffs' claims are brought under subsection (2).

[8] Indeed, the Mississippi Attorney General's website contains reference to procedures for attempting to informally resolve consumer claims through the office. *See* http://www.ago.state.ms.us/wpcontent/uploads/2013/08/Consumer-Guide-to-Mississippi-Consumer-Protection-Law.pdf (last visited April 6, 2016).

"Mississippi law is clear that 'failure to satisfy the prerequisite of an attempt at informal dispute resolution is fatal to a MCPA claim.'" *Humphrey v. Citibank, N.A.*, 2013 U.S. Dist. Lexis 137465, *16 (N.D. Miss. 2013). Courts therefore routinely dispose of MCPA claims failing to satisfy this statutory prerequisite. *See id.* (dismissing MCPA claim because "[t]he Complaint alleges no attempt by Plaintiff to resolve her MCPA claim through an informal dispute settlement program approved by Mississippi's Attorney General before filing suit."); *Taylor v. Southern Farm Bureau Cas. Co.*, 954 So. 2d 1045, 1049 (Miss. Ct. App. 2007) (affirming dismissal of MCPA claim since the "record in this case is devoid of any reference to [plaintiff] attempting to resolve this issue through an informal settlement program"); *Dominquez v. Palmer*, 970 So. 2d 737, 743 (Miss. Ct. App. 2007) (affirming summary judgment on MCPA claim because plaintiff "did not take any steps to resolve her claim through informal resolution as required by the statute."); *Lockey v. CMRE Fin. Servs., Inc.*, 2011 U.S. Dist. Lexis 79163, *8 (S.D. Miss. 2011) (dismissing MCPA claims for failure to follow statutory prerequisite).

No court in Mississippi appears to have ever excused this requirement prior to filing suit. Accordingly, Plaintiffs' MCPA claims are due to be dismissed.

### B. The MCPA is Not Applicable to the Facts Alleged.

The Complaint's fatal MCPA deficiency aside, a private right of action under the MCPA may only be brought by a plaintiff "who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss" as a result of the prohibited acts in §75-24-5(2). *See* MISS. CODE ANN. §75-24-15(1) (emphasis added); *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 666 (S.D. Miss. 2007).

Each of Plaintiffs' MCPA claims is premised upon the sale and purchase of electricity from MPC. (Complaint, ¶ 44). As an initial matter, Plaintiffs must establish that the alleged

conduct of a *publicly regulated* utility is actionable under the MCPA. "The general rule for the existence of a private right of action under a statute is that the party claiming the right of action must establish a legislative intent, express or implied, to impose liability for violations of that statute." *Doe v. State ex rel. Miss. Dep't of Corr.*, 859 So. 2d 350, 355 (Miss. 2003); *see also Cole*, 554 F. Supp. 2d at 661 (applying same rule to MCPA).

Nothing in the MCPA's statutory framework suggests legislative intent to impose a private right of action against a public utility regulated by legislative bodies (*i.e.* FERC and the PSC). To the contrary, the Legislature expressly delegated the PSC with "<u>exclusive original jurisdiction</u>" over the regulation and retail rates of MPC as a public utility — a strong indication that there is no such private right of action under the MCPA. *See* MISS. CODE ANN. §77-3-5; *Singing River Mall Co. v. Mark Fields, Inc.*, 599 So. 2d 938, 942 (Miss. 1992) (reversing circuit court's exercise of jurisdiction over allegations that the defendant "improperly acted as a public utility" by allegedly overcharging tenant).[9]

The Colorado Court of Appeals was faced with similar consumer protection claims against a public utility brought under the Colorado Consumer Protection Act, §§ 6-1-105 *et seq*., C.R.S. 2005. *See City of Aspen v. Kinder Morgan, Inc.*, 143 P.3d 1076 (Colo. Ct. App. 2006). Colorado's Consumer Protection Act is for all relevant purposes identical to the MCPA.[10] The court first recognized that the plaintiffs' consumer protection claims necessarily invoked the rate-making authority of the Colorado Public Utility Commission:

---

[9] FERC likewise has exclusive jurisdiction over MPC's wholesale electric utility rate matters pursuant to the Federal Power Act, 16 U.S.C. §§ 824 *et seq*. *See Gulf States Utilities Co. v. Alabama Power Co*., 824 F.2d 1465, 1469 (5th Cir. 1987) ("The FPA gives the [FERC] exclusive jurisdiction over interstate wholesale electricity rates."). FERC is vested with broad remedial power to fix rates determined to be unlawful. 16 U.S.C. § 824e.

[10] Compare § 6-1-105, C.R.S. 2005 (Colorado deceptive trade practices) with Miss. Code Ann. § 75-24-5.

Whether characterized as paying too much for the gas received (as alleged in the complaint) or not receiving the heating content that was represented (as argued on appeal), the essence of the complaint is that defendants overcharged Aspen given the heating content of the gas it sold. But even if so, defendants used rates and conversion factors that the trial court found, with record support, had been approved by the PUC. Thus, we conclude ratemaking is inextricably intertwined with these claims.

*Id*. at 1080. The court then noted that unlike Colorado's general Consumer Protection Act, Colorado's utility statutes expressly provide a "specific procedure" for setting and regulating public utility rates. *Id*. The court thus concluded that "because the PUC statutes specifically address the issues raised in [plaintiffs'] claims, and the CCPA only generally addresses deceptive trade practices, the PUC statutes govern." *Id*. Since Colorado's utility statutes vested the PUC with broad power to remedy unlawful rates, the court held that even if a private right of action against a public utility could be brought under the CCPA (an issue the court declined to decide), the court was without subject matter jurisdiction to entertain it. *Id*.

Similarly, in Mississippi, the PSC is vested with "exclusive original jurisdiction" over MPC's retail electric utility rates and has specific statutory remedial power over the allegedly unlawful rates paid by Plaintiffs. *See* Miss. Code Ann. §§ 77-3-5, 77-3-41. The Mississippi Supreme Court has likewise "recognized that a specific statute will control over a general one." *Lenoir v. Madison County*, 641 So. 2d 1124, 1129 (Miss. 1994); *see also Brown v. Ponotoc County Sch. Dist. (In re Doe)*, 957 So. 2d 410, 420 (Miss. Ct. App. 2007). The more specific PSC statutes therefore must govern the more general MCPA. Accordingly, just like the plaintiffs in *Aspen,* the Plaintiffs in this case must first seek relief from the PSC (regardless of whether a private right of action under the MCPA against a public utility exists in the first instance, which it does not).

Further, the claims of the Business and Casino must be dismissed because, by definition, such entities cannot purchase electricity "primarily for <u>personal, family or household purposes</u>" as required by the MCPA. *See* Miss. Code Ann. §75-24-15(1). Electricity purchased by the Business and Casino was for <u>business purposes</u> (and not personal, family or household purposes). As a result, they cannot state a claim under the MCPA based on the facts alleged. *See River Region Med. Corp. v. Am. Lifecare, Inc.*, 2008 U.S. Dist. Lexis 21693, *20 (S.D. Miss. 2008) (services for "commercial, for-profit reasons" are not actionable under MCPA).

## III. PLAINTIFFS' FRAUD ALLEGATIONS FAIL AS A MATTER OF LAW.

To survive a motion to dismiss, the Complaint must allege with particularity the following elements of fraud: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon only by the person and in the matter reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. *Yowell v. James Harkins Builder, Inc.*, 645 So. 2d 1340, 1344 (Miss. 1994).

"A complaint will be dismissed when a party fails to sufficiently plead allegations of fraud." *Walton v. Walton*, 52 So. 3d 468, 471 (Miss. Ct. App. 2011) (affirming dismissal of fraud claim). Plaintiffs' broad allegations of fraud are defective for a number of reasons:

### A. The Complaint Does Not Allege Time and Place With Particularity.

Fraud cannot be inferred from the Complaint and circumstances such as the "time, place and contents" of any alleged false representations must be specifically stated. *Williams*, 112 F.3d at 177 (citing Fed. R. Civ. P. 9(b)). The policy behind Rule 9(b) is sound: a defendant must be put on notice of the specific time, place and contents of the alleged fraud in order to properly answer and defend the same. Plaintiffs' Complaint, however, merely alleges:

> *Within the last three years*, Defendant concealed, falsely represented, and/or made partial disclosures to Plaintiffs as follows:
>
> a.      Defendant *stated* that the Kemper Power Plant would start generating power in 2013;
>
> b.      Defendant *stated* that the Kemper Power Plant would start generating power in May 2014;
>
> .......
>
> h.      Defendant *concealed* the long-range rate impact information of the 2015 rate package by asking that the information, of great interest to Plaintiffs and to the general public, be kept confidential.
>
> ......
>
> k.      Defendant *has continued* to misinform the public, including ratepayers such as Plaintiffs, in an effort to continue to conceal its mismanagement, *stating that . . .*

(Complaint, at ¶ 54(a)-(k)) (emphasis added); *see also* (Complaint, at ¶¶ 55-59) (simply alleging MPC "failed to disclose the whole truth," "has known and continues to be aware of undisclosed irregularities," and "fraudulently concealed and failed to disclose these facts").

"These excerpts, standing alone, cannot satisfy the 'who, what, when, where, and how' required by Rule 9(b)." *Williams*, 112 F.3d at 179 (reversing district court and dismissing fraud claims). Not once do Plaintiffs specifically identify the *time* of these alleged misrepresentations, the *place* they occurred, or *when* Plaintiffs may have heard such alleged misrepresentations. *See* (Complaint, at ¶ 54) (alleging fraud generally occurred "[w]ithin the last three years"). What Plaintiffs essentially plead is nothing more than fraudulent acts or omissions were made by MPC sometime, somewhere, within the three (3) year statute of limitations. Such broad allegations are <u>not</u> sufficient under Rule 9(b). *See Brandon v. Beverly Enters.*, 2007 U.S. Dist. Lexis 26627, *4 (N.D. Miss. 2007) (dismissing fraud claim because the complaint "fails to specifically identify when the Plaintiff purportedly heard, read or relied upon the statements that form the basis of the fraud claims."); *Howard v. Estate of Harper*, 947 So. 2d 854, 861 (Miss. 2006) ("The complaint does not specify the date or locations the allegedly fraudulent statements were made. We find

these general allegations and missing content fatal under the pleading standards of Rule 9(b).").

Plaintiffs' fraud and fraudulent concealment claims should be dismissed in accordance with this

precedent.

### B. MPC Has No Fiduciary Relationship With Plaintiffs.

Plaintiffs' fraudulent concealment claim fails as a matter of law assuming it was

adequately pled. The Complaint alleges that MPC fraudulently "concealed" or "failed to

disclose" certain information from Plaintiffs regarding the Kemper Project and MPC's rates. *See*

(Complaint, at ¶¶ 54-57). "In Mississippi, a claim of fraud by omission arises only where the

defendant had a duty to disclose material facts purportedly omitted." *Taylor*, 954 So. 2d at 1049

(emphasis added). A duty to disclose "generally arises only where there is a fiduciary

relationship between the parties." *Id*. (emphasis added); *see also Allstate Life Ins. Co. v. Parnell*,

292 Fed. Appx. 264, 274-75 (5th Cir. Miss. 2008) (same; applying Mississippi law).

In order to state a claim for fraudulent concealment, Plaintiffs must establish that MPC

had a "fiduciary" or "special" relationship with Plaintiffs giving rise to a duty to disclose the

alleged concealed information. But the relationship between MPC and its customers is — like

any other business — simply an arms-length transaction and is not fiduciary in nature. *See*

*Taylor*, 954 So. 2d at 1049 (affirming dismissal of fraud claim based on omission since no

fiduciary relationship existed between insurer and insured).

Stated differently, MPC is a "manufacturer" and seller of electricity. *See Miss. Dep't of*

*Revenue v. Miss. Power Co.*, 144 So. 3d 155, 156 (Miss. 2014) (noting that the Mississippi

Department of Revenue stipulated that MPC is a "manufacturer" as contemplated by tax

statutes). As a manufacturer, MPC has no obligation to disclose the alleged material information

to Plaintiffs as consumers. *See Harris v. Brush Engineered Materials*, 2005 U.S. Dist. Lexis

42348, *7 (S.D. Miss. 2005) ("[I]n Mississippi, the mere silence or nondisclosure of material facts by a manufacturer does not support a finding of fraudulent concealment brought by the ultimate consumer.") (dismissing fraudulent concealment claim).[11]  As a result, Plaintiffs cannot state a claim for fraudulent concealment.

       **C.**       **Plaintiffs Have Not Adequately Pled Reasonable Reliance on MPC's Alleged Representations to Plaintiffs' Detriment.**

As previously stated, Plaintiffs could not have detrimentally relied upon any representations by MPC based upon the "presumed knowledge" doctrine.  Yet another independent defect in Plaintiffs' fraud claims is underscored in the following allegation: "Relying on Defendant's false and misleading statements and concealment, Plaintiffs continued to purchase electricity from Defendant and refrained from investigating or questioning Defendant's mismanagement . . ."  (Complaint, ¶ 57) (emphasis added).  According to Plaintiffs, had they known of the allegedly concealed information, they would not have continued to purchase electricity "without investigating or questioning" MPC's alleged mismanagement of the Kemper Project.  (Complaint, ¶ 57).

First, Plaintiffs conspicuously do not allege that had they conducted this "investigating and questioning," they would have ceased using electricity from MPC at the rates approved by FERC and the PSC (as Plaintiffs continue to do).  All of Plaintiffs' alleged fraud damages are premised upon their electric utility rates.  Yet Plaintiffs never actually allege they would have stopped paying these rates.  Thus, on the face of the Complaint, Plaintiffs' claimed damages

---

[11] A number of courts reach identical conclusions and hold a consumer plaintiff may not bring a cause of action against a manufacturer for fraud based on omission. *See e.g., Jowers v. BOC Group, Inc*., 2009 U.S. Dist. Lexis 53126, *28 (S.D. Miss. 2009) (fraud based on omission against a manufacturer must "fail as a matter of law"); *Woods v. R.J. Reynolds Tobacco Co*., 635 F. Supp. 2d 530, 538 (S.D. Miss. 2009) (granting summary judgment on fraudulent concealment claim because "plaintiff has failed to plead, much less demonstrate, any basis for a fiduciary or other confidential relationship" between consumer and manufacturer).

cannot be the result of any detrimental "reliance" on MPC's alleged conduct, which is a required element for pleading a fraud claim in Mississippi. *See Eagle Mgmt., LLC v. Parks*, 938 So. 2d 899, 905 (Miss. Ct. App. 2006) (affirming dismissal of fraud claim as "the circuit court was correct in its determination that the [fraud] damages alleged by [plaintiff] did not arise from any representation of [defendant]"); *see also Walton*, 52 So. 3d at 471.

Plaintiffs' failure to plead detrimental reliance is for good reason. It is completely illogical. MPC is the only legally authorized provider of retail electric service in Plaintiffs' geographic location. Plaintiffs thus have three (3) alternatives to meet their electric needs: (i) move out of MPC's service territory; (ii) self-generate their own electricity; or (iii) purchase MPC's electricity at the rates approved by either FERC or the PSC. Plaintiffs failed to allege that they could have purchased or self-generated electricity from a cheaper alternative source than MPC. Absent any allegation of such an alternative power source, Plaintiffs' fraud claims fail as a matter of law because the element of detrimental "reliance" is lacking.

Second, assuming Plaintiffs sufficiently alleged detrimental reliance, such reliance is not "reasonable" as a matter of law. Mississippi law is settled that "<u>where a plaintiff has an opportunity to investigate the statements upon which she allegedly relied, the plaintiff cannot be said to have reasonably relied on those statements</u>." *Taylor*, 954 So. 2d at 1050 (emphasis added). Plaintiffs, however, allege just the opposite — that "relying" on MPC's representations, Plaintiffs "<u>refrained from investigating or questioning</u>" MPC's conduct. *See* (Complaint, ¶ 57). Plaintiffs had ample opportunity to investigate the alleged statements relating to the Kemper Project, which has been well-publicized since at least 2010. The FERC and PSC proceedings relating to the Kemper Project are open to the public and statements made by MPC therein are a matter of public record.

Indeed, the Casino actually intervened in the PSC proceedings to establish MPC's current rates. After the PSC approved the new rates in December 2015, the Casino failed to timely pursue their administrative remedy and appeal the PSC's decision to the Mississippi Supreme Court by the February 24, 2016 deadline. The Business and the Individual failed to intervene at the PSC or appeal to the Mississippi Supreme Court. Instead, the Plaintiffs filed suit in Circuit Court on March 2, 2016 (seven (7) days after the appeal deadline expired) in an attempt to collaterally attack the PSC's Order. Plaintiffs had every opportunity to "investigate" or "question" MPC's alleged conduct forming the basis for their fraud claims, yet admittedly failed to do so. *See* (Complaint, ¶ 57).

As a matter of law, Plaintiffs cannot be said to have "reasonably relied" upon alleged representations of MPC which were not investigated. *See Taylor*, 954 So. 2d at 1050 (holding that "as a matter of law that [plaintiff] cannot establish the element of reasonable reliance" for fraud because plaintiff could have investigated the valuation of her insured automobile). Absent "reasonable reliance," a fraud claim cannot survive a motion to dismiss. *See Arnona v. Smith*, 749 So. 2d 63, 66-67 (Miss. 1999) (affirming dismissal of claim for negligent misrepresentation because, *inter alia*, the requisite element of reliance was lacking); *Brumfield v. Pioneer Credit Co.*, 291 F. Supp. 2d 462, 469 (S.D. Miss. 2003) ("Thus, any reliance on alleged misrepresentations of this term was, as a matter of law, unreasonable.") (dismissing fraud claims). The fact that MPC's alleged representations relating to the Kemper Project are a matter of public record makes Plaintiffs' admitted failure to investigate inexcusable. Plaintiffs' fraud and fraudulent concealment claims must be dismissed.

## IV. FERC AND PSC APPROVAL OF MPC'S RATES DEFEATS PLAINTIFFS' TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS CLAIM.

Plaintiffs' "interference with prospective economic advantage" claim requires four (4) elements: (i) MPC's acts were intentional and willful; (ii) MPC's acts were calculated to cause damage to Plaintiffs' lawful business; (iii) MPC's acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause; and (iv) Plaintiffs suffered actual damage and loss as a result. *Freeman v. Huseman Oil Int'l*, 717 So. 2d 742, 744 (Miss. 1998) (elements for tortious interference with business relations); *Nichols v. Tri-State Brick & Tile Co.*, 608 So. 2d 324, 328 (Miss. 1992) (same elements for prospective economic advantage claim).

The illogical premise of this claim is noteworthy— Plaintiffs are alleging that MPC, as a publicly regulated utility, <u>intentionally</u> increased electric rates and "mismanaged" the Kemper Project with the <u>willful intent</u> of causing damage to <u>Plaintiffs' business</u>. *See* (Complaint, ¶¶ 61-65). Lack of merits and absurdity aside, this claim is likewise due to be dismissed.

### A.     The Individual

The Complaint fails to identify any form of "lawful business" in which the Individual is engaged and with which MPC allegedly interfered. *See* (Complaint). At best, the Complaint could be read to plead that MPC intentionally interfered with the Individual's personal financial position. Such alleged interference is not actionable in Mississippi as a matter of law. *Burgess v. Bankplus*, 830 So. 2d 1223, 1229 (Miss. 2002) ("[I]ntentional interference with [an individual's personal] advantageous financial position is not a tort recognized in Mississippi, and if it were, it can only be imagined that persons alleging it would fill the courthouses to the brim with complaints . . ."). The Individual's claim therefore must be dismissed.

### B.    The Casino and Business

With respect to the Casino and the Business, the Complaint likewise fails to allege or identify any specific businesses having relations with which MPC allegedly intentionally interfered. The Complaint only makes conclusory allegations reciting the above-referenced elements. *See* (Complaint, ¶¶ 62-63) (alleging interference with Plaintiffs' "economically-advantageous relationships" and "contractual and other business relationships"). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn*, 42 F.3d at 931. Standing alone, Plaintiffs' failure to even notice-plead this claim is grounds for dismissal.

### C.    Justifiable Interference

This claim further fails because MPC's alleged interference as a matter of law was not performed "<u>without right or justifiable cause</u>." *Freeman*, 717 So. 2d at 744. In Mississippi, "there is no tortious interference when one has a justifiable interest and reason for acting." *Vestal v. Oden*, 500 So. 2d 954, 957 (Miss. 1986) (holding that a legitimate contractual interest defeats a tortious interference claim); *Hopewell Enters., Inc. v. Trustmark Nat'l Bank*, 680 So. 2d 812, 819 (Miss. 1996) (a bank's interest in "getting paid on [a] note" was sufficient justification to defeat tortious interference claim); *Cockerham v. Kerr-McGee Chem. Corp.*, 23 F. 3d 101 (5th Cir. 1994) (dismissing claims because interest in profits and a potential contractual relationship were justifiable).

Like all other counts in the Complaint, Plaintiffs' tortious interference claim is entirely premised on MPC's electric utility rates. *See* (Complaint, ¶¶ 61-65). The rates actually paid by Plaintiffs, however, were approved by FERC and the PSC through extensive legal proceedings initiated by MPC under the Federal Power Act, 16 U.S.C. §§ 824 *et seq.*, and the Public Utilities

Act, Miss. Code Ann. §§ 77-1-1 *et seq.*  The legal authority of FERC and the PSC to establish MPC's rates is beyond settled, and courts have long-recognized that MPC is "justified" when acting pursuant to the PSC's approval.  *See Wood v. Mississippi Power Co.*, 245 Miss. 103, 113-14 (Miss. 1962) (holding MPC cannot be liable for cutting of trees even absent landowner's permission since MPC had obtained requisite certificate issued by the PSC).[12]  Similarly, a tortious interference claim is defeated as a matter of law when alleged interference results from a party merely seeking to enforce a lawful court order.  *See Acadian Health Ctr., Inc. v. Hyperion Found., Inc.*, 2012 U.S. Dist. Lexis 20674, *27-28 (S.D. Miss. 2012).

Thus, accepting Plaintiffs' allegations as true, their claims fail as a matter of law because MPC was acting with legal right and "justifiable cause."  *See id.*; *Freeman*, 717 So. 2d at 744.

## IV.    PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED.

Plaintiffs appear to seek preliminary and permanent injunctive relief against MPC — the conduct sought to be enjoined is more difficult to ascertain.  The Complaint merely requests the Court prevent MPC "from taking the arbitrary and unlawful actions cited above" without identifying the above-cited actions, and later requests as damages that the Court "refund Plaintiffs all costs . . . that resulted in whole or in part from fraud, misrepresentation, concealment and/or unfair business practices."  *See* (Complaint, ¶¶ 19, 67).

The ambiguous nature of the request, standing alone, is sufficient grounds to deny the injunction.  *See* FED. R. CIV. P. 65(d) (requiring injunctive relief be stated "specifically" and "describe[d] in reasonable detail").  In any event, Plaintiffs' failure to state a claim as to all other counts in the Complaint renders their request for injunctive relief moot.

---

[12] The United States Supreme Court has also held that a claim for tortious interference with contractual relations is barred under the filed-rate doctrine, discussed *infra*, when the claim effectively challenges the rates approved by FERC.  *See American Tel. & Telegraph Co.,* 524 U.S. at 227-28.

To obtain injunctive relief, Plaintiffs must demonstrate: (i) a substantial likelihood that Plaintiffs will prevail on the merits; (ii) a substantial threat of irreparable injury if the injunction is not issued; (iii) the threatened harm to Plaintiffs outweighs the harm to MPC if granted; and (iv) injunctive relief will not disserve the public interest. *Urgent Care Inc. v. S. Miss. Urgent Care, Inc.*, 289 Fed. Appx. 741, 743 (5th Cir. 2008).

First, as set forth in MPC's Jurisdictional Motion and herein, FERC and the PSC have jurisdiction over this matter and, even assuming otherwise, each cause of action in the Complaint fails to state a claim for relief. The first factor thus weighs in favor of MPC. The second factor prohibits an injunction because Plaintiffs have expressly alleged an adequate remedy in the form of money damages in this case. *See* (Complaint, ¶ 35) (alleging the Business paid "$117,058.34 in excess power costs" attributable to MPC); (Complaint, ¶¶ 66-69) (requesting money damages). In other words, "because Plaintiffs only alleged harm can be obviated by monetary relief, it does not constitute the 'irreparable' injury necessary to obtain the extraordinary remedy of a preliminary injunction." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279-80 (5th Cir. 2013) (denying request for injunctive relief).

The third and fourth factors likewise warrant denial of an injunction. The alleged conduct forming the basis of the Plaintiffs' request for injunctive relief — the imposition of MPC's electric utility rates — is the subject of <u>current proceedings before FERC and the PSC</u>. The Mississippi Supreme Court has on numerous occasions "firmly" established the rule that "the function of rate making in this state is purely legislative in character and a court is without power to fix rates charged by a public utility." *Miss. Pub. Serv. Comm'n v. South Cent. Bell Tel. Co.*, 464 So. 2d 1133, 1135 (Miss. 1984). Further, FERC and the PSC are statutorily charged with protecting the "public interest" during MPC's proceedings. *See* 116 U.S.C. § 824(a); *see*

*also* MISS. CODE ANN. §§77-3-2, 77-3-5.  Therefore, in order to fashion any form of injunctive relief, this Court would first have to usurp FERC and the PSC's stated authority.  Plaintiffs' request should be denied.

## CONCLUSION

Assuming *arguendo* this Court has subject matter jurisdiction, which MPC specifically denies, Plaintiffs claims are barred by the filed-rate doctrine and fail to sufficiently allege the required elements for each cause of action in the Complaint.  The Complaint should be dismissed.

WHEREFORE, PREMISES CONSIDERED, Mississippi Power Company respectfully requests that this Court dismiss Plaintiffs' claims pursuant to FED. R. CIV. P. 12(b)(6) and/or 12(c), with all costs assessed to Plaintiffs.  MPC further requests that pursuant to MISS. CODE ANN. §75-24-15(3), the Court award MPC its reasonable attorneys' fees and other costs incurred in the defense of this matter, in an amount to be determined by the Court at a later hearing.  MPC would further request any other relief this Court deems just and proper.

Respectfully submitted, this the 7th day of April, 2016.

MISSISSIPPI POWER COMPANY

BY:    BALCH & BINGHAM LLP

BY:    /s/ *Ben H. Stone*
        Of Counsel

Ben H. Stone (MSB No. 7934)
Jonathan P. Dyal (MSB No. 99146)
K.C. Hightower (MSB No. 101246)
Balch & Bingham LLP
1310 Twenty Fifth Avenue
Gulfport, Mississippi
Telephone:  (228) 864-9900
Facsimile:   (228) 864-8221

**CERTIFICATE OF SERVICE**

I, the undersigned counsel of record, do hereby certify that I have this day electronically filed the foregoing document with the CM/ECF system, which sent notice of the same to the following:

Joe Sam Owen
jso@owen-galloway.com

Robert P. Myers, Jr.
rpm@owen-galloway.com

Michael J. Avenatti, Esq.
mavenatti@eaganavenatti.com

This the 7th day of April, 2016.

/s/ *Ben H. Stone*
Of Counsel